UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Denson International Limited,<br><br>        Plaintiff,<br><br>v.<br><br>Liberty Diversified International,<br>Inc., d/b/a Safco Products Company,<br><br>        Defendant. | Civil File No. 12-CV-03109-DSD-JSM<br><br><br>**ANSWER AND COUNTERCLAIMS BY DEFENDANT LIBERTY DIVERSIFIED INTERNATIONAL, INC., D/B/A SAFCO PRODUCTS COMPANY** |

## GENERAL DENIAL

Defendant Liberty Diversified International, Inc. ("LDI") denies each and every allegation in Plaintiff's Complaint except as expressly admitted herein. LDI further denies that Plaintiff has any claims against it and that the Plaintiff has suffered damage by any reason, or any act or omission to act, or any other conduct on the part of LDI.

## PARTIES

1.  In response to Paragraph 1 of the Complaint, LDI states that it lacks sufficient information to admit or deny the allegations contained in that paragraph.

2.  LDI admits that it is a citizen of and incorporated in the state of Minnesota. LDI, however, does not do business as, and is not a "d/b/a" entity with respect to Safco Products Co. ("Safco"). Rather, Safco is a separately incorporated, wholly owned subsidiary of LDI.

## JURISDICTION AND VENUE

3. In response to Paragraph 3 of the Complaint, LDI admits Plaintiff has alleged the basis for diversity of citizenship jurisdiction.

4. LDI admits that venue is appropriate, as it resides in this district.

## JURY DEMAND

5. In response to Paragraph 5 of the Complaint, LDI acknowledges Plaintiff's demand for a jury trial.

## FACTUAL BACKGROUND

6. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 6. With respect to the final sentence in Paragraph 6, LDI denies that Plaintiff currently sells any goods to Safco.

7. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 7.

8. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 8.

9. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 9.

10. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 10.

11. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 11.

12. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 12.

13. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 13.

14. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 14.

15. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 15.

16. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 16.

17. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 17.

18. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 18.

19. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 19.

20. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 20.

21. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 21.

22. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 22.

23. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 23.

24. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 24, but for the conclusions of law therein, to which no answer is required.

25. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 25.

26. LDI denies the allegations of Paragraph 26 of the Complaint.

27. With respect to the allegations in Paragraph 27, LDI admits that Safco's primary, if not exclusive, business involves marketing and selling office equipment and office furniture to resellers, not end users. LDI further admits that Safco began transacting business with Plaintiff in the early 1990's. LDI is without sufficient information at this time to admit or deny the remaining allegations of Paragraph 27.

28. With respect to the allegations in Paragraph 28, LDI admits that as part of Safco's ordinary business dealings, Safco would send Plaintiff a drawing or picture of the type of office products Safco required. LDI is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 28.

29. LDI admits that Safco negotiated a final purchase price with Plaintiff. LDI is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 29.

30. LDI is without knowledge or information sufficient at this time to admit or deny the allegations of Paragraph 30.

31. LDI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 31.

32. LDI is without knowledge or information sufficient at this time to admit or deny the allegations of Paragraph 32.

33. LDI denies the allegations of Paragraph 33 of the Complaint.

34. LDI denies the allegations of Paragraph 34 of the Complaint.

35. LDI denies the allegations of Paragraph 35 of the Complaint.

36. LDI is without sufficient knowledge or information at this time to admit or deny the allegations of Paragraph 36 of the Complaint.

37. LDI is without sufficient knowledge or information at this time to admit or deny the allegations of Paragraph 37 of the Complaint.

38. LDI denies the allegations of Paragraph 38 of the Complaint.

39. LDI denies the allegations of Paragraph 39 of the Complaint.

40. With regard to the allegations of Paragraph 40, LDI admits that Pam LaFontaine sent an e-mail to Vincent To on April 16, 2008, which is a writing that speaks for itself.

41. With regard to the allegations of Paragraph 41, LDI admits that Pam LaFontaine sent an e-mail to Vincent To on April 16, 2008 with an attachment, which is a writing that speaks for itself.

42. LDI denies the allegations of Paragraph 42 of the Complaint.

43. LDI denies the allegations of Paragraph 43 of the Complaint.

44. With regard to the allegations of Paragraph 44, LDI admits that Vincent To sent an e-mail to Pam LaFontaine on April 21, 2011, which is a writing that speaks for itself. LDI states that it lacks sufficient information to admit or deny the remaining allegations of Paragraph 44.

45. With regard to the allegations of Paragraph 45, LDI admits that Pam LaFontaine sent an e-mail to Vincent To on May 3, 2011, which is a writing that speaks for itself.

46. LDI denies the allegations of Paragraph 46 of the Complaint.

47. LDI denies the allegations of Paragraph 47 of the Complaint.

48. With regard to the allegations in Paragraph 48, LDI admits that Phil Mandigo sent an e-mail to Vincent To on May 4, 2011, which is a writing that speaks for itself.

49. LDI denies the allegations of Paragraph 49 of the Complaint.

## COUNT 1 – MISAPPROPRIATION OF TRADE SECRETS

50. LDI realleges and reincorporates its answers to Paragraphs 1-49 of the Complaint as if fully set forth herein.

51. Paragraph 51 of the Complaint alleges a legal conclusion to which no response is required. However, to the extent a response is necessary, LDI denies the allegations.

52. LDI denies the allegations of Paragraph 52 of the Complaint.

53. LDI states that allegations in Paragraph 53 of the Complaint do not allege facts that warrant a response but instead assert legal conclusions. LDI denies the remaining allegations contained in Paragraph 53.

54. LDI states that allegations in Paragraph 54 of the Complaint do not allege facts that warrant a response but instead assert legal conclusions. LDI denies the remaining allegations contained in Paragraph 54.

55. LDI denies the allegations of Paragraph 55 of the Complaint.

56. LDI denies the allegations of Paragraph 56 of the Complaint.

57. LDI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 57 of the Complaint.

58. LDI denies the allegations of Paragraph 58 of the Complaint.

59. LDI denies the allegations of Paragraph 59 of the Complaint.

60. LDI denies the allegations of Paragraph 60 of the Complaint.

61. LDI denies the allegations of Paragraph 61 of the Complaint.

62. LDI denies the allegations of Paragraph 62 of the Complaint.

63. LDI denies the allegations of Paragraph 63 of the Complaint.

64. LDI denies the allegations of Paragraph 64 of the Complaint.

65. LDI denies the allegations of Paragraph 65 of the Complaint.

66. LDI denies the allegations of Paragraph 66 of the Complaint.

## COUNT II – WILLFUL AND MALICIOUS MISAPPROPRIATION OF TRADE SECRETS

67. LDI realleges and reincorporates its answers to Paragraphs 1-66 of the Complaint as if fully set forth herein.

68. With respect to the allegations of Paragraph 68, LDI states that product liability lawsuits are not uncommon for Safco. Typically, Safco has several products liabilities suits ongoing at any one time. Without further information regarding the alleged lawsuit, such as the year, LDI lacks sufficient knowledge or information at this time to admit or deny the allegations of Paragraph 68 of the Complaint.

69. LDI realleges and reincorporates its answer to Paragraph 68 herein. However, LDI denies that the failure to succeed in a lawsuit renders the action frivolous.

70. LDI denies the allegations of Paragraph 70 of the Complaint.

71. LDI denies the allegations of Paragraph 71 of the Complaint.

## ADDITIONAL DEFENSES

LDI alleges and asserts the following additional defenses (in addition to those stated above). In addition to the defenses asserted below, LDI specifically reserves all rights to assert any other or additional defenses that are now or may become available or appear during, or as a result of, the proceedings or further investigation in this action.

### First Defense

Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### Second Defense

Plaintiff's injuries, if any, were caused, in whole or in part, by Plaintiff's own actions or failures to act.

### Third Defense

Plaintiff has not identified any alleged trade secrets owned by Plaintiff and misappropriated by LDI, and cannot prove the same.

### Fourth Defense

The information Plaintiff alleges was misappropriated by LDI is not a trade secret as defined by the Minnesota Uniform Trade Secrets Act because: (a) the information was generally known and/or readily ascertainable by proper means; (b) the information does not derive independent economic value from its secrecy; and (c) Plaintiff did not take reasonable efforts to maintain its secrecy.

### Fifth Defense

Plaintiff unreasonably failed to take advantage of appropriate opportunities to prevent, mitigate, accommodate, and/or correct any damages, harmful conduct, problem, or complaint.

### Sixth Defense

Any damage, loss, or injury Plaintiff may have suffered was not caused by or attributable to LDI.

### Seventh Defense

Plaintiff's injuries, if any, were caused in whole or in part, by Plaintiff's or other's actions or failures to act.

## **COUNTERCLAIMS**

**Background**

1.  VCDE, Inc. ("VCDE") is a wholly owned subsidiary of LDI. At all times relevant to this lawsuit, VCDE operated as Valley Craft, Inc. ("Valley Craft"). Valley Craft is a metal fabrication company which designs, develops, and sells metal hand trucks, among other products.

2.  While a wholly owned subsidiary of LDI, Valley Craft imported both lightweight aluminum and heavy-duty steel hand trucks from Plaintiff. Plaintiff, in turn, purchased the hand trucks from different factories located in China. Vincent To was Valley Craft's primary contact with regard to the purchase of hand trucks from Plaintiff.

3.  In December 2004, the United States Department of Commerce issued an antidumping duty order on *Hand Trucks and Certain Parts Thereof from the People's Republic of China*, 69 Fed. Reg. 70122 (2004). Under the order, the Department of Commerce assigned an antidumping duty rate of 383.6 percent on most exporters of hand trucks and hand truck parts from China.

4.  At the time the Department of Commerce antidumping duty order was issued, one of Plaintiff's hand truck suppliers, Qingdao Taifa Group Co., Ltd. ("Taifa"), had applied for and received a separate, significantly lower, antidumping rate of 26.49 percent. Through Plaintiff, Taifa produced and exported Valley Craft's Viking steel heavy-duty hand trucks.

5.  Valley Craft's aluminum hand truck manufacturer, also sourced through Plaintiff, did not have a separate antidumping rate. As a result, Valley Craft's aluminum

hand trucks produced and exported by that manufacturer would be subject to the full 383.6 percent antidumping rate under the Department of Commerce's order.

**Valley Craft's Decision to Change Hand Truck Manufacturers**

6. Prior to issuing its final determination in December 2004, the Department of Commerce issued a preliminary determination regarding hand trucks imported from China in May 2004, 69 Fed. Reg. 29,509 (Dep't of Commerce May 24, 2004) and instructed United States Customs and Border Protection ("Customs") to begin collecting antidumping cash deposits on importations of hand trucks from China.

7. Upon receiving the preliminary determination, in July 2004, Valley Craft contacted Plaintiff and cancelled a pending order of aluminum hand trucks, explaining that it "is not feasible" for Valley Craft to import the hand trucks under the new antidumping rate. Valley Craft offered to pay for the material costs and asked whether Plaintiff had a manufacturing company outside China where the production of hand trucks could be moved.

8. To responded to Valley Craft's request, stating that he had "asked them to hold the production" and would "check and see how we can move the Handtrucks production to eliminate or only suffer much less Anit [sic] Dumping Duty."

9. In early August 2004, To recommended moving the production of all hand trucks to the Taifa factory, which had been granted the lower antidumping rate. A few days later, To advised that, with regard to the production of Valley Craft's aluminum hand trucks, Plaintiff had "successfully pushed our factory to accept the original prices" presuming the minimum order quantities were met.

11

10. In October 2004, To represented to Valley Craft that Plaintiff had "started the tooling and sample production in the same" factory where the Viking steel hand trucks were made. To advised that Plaintiff would move the production of Valley Craft's aluminum hand trucks to that factory if the samples were acceptable.

**Plaintiff's Misrepresentations Regarding Hand Truck Manufacturer**

11. Between 2004 and 2008, Plaintiff and To represented to Valley Craft that its aluminum hand trucks were manufactured by the Taifa factory.

12. Valley Craft imported a number of shipments of aluminum hand trucks from Plaintiff during the late 2004 to early 2008 time period. With respect to each of those orders, Plaintiff represented on the commercial invoice that the hand trucks had been "PRODUCED BY QINGDAO TAIFA GROUP IMP & EXP CO., LTD WITH THE ANTI-DUMPING CASE NUMBER A570891-004." As a result, Valley Craft paid only the lower antidumping rate of 26.49 percent on those shipments, rather than the full 383.6 percent.

13. In July 2007, Valley Craft employee Brad Swanson inquired from Plaintiff whether Valley Craft was purchasing any hand trucks made at a factory named Qingdao Future Tool. Plaintiff responded that no Valley Craft products were made by Future Tool and that "[a]ll of the hand truck products that we have shipped to your company were produced by Quingdao Taifa Group Imp. & Exp. Co. with the Anti-dumping case number A570891-004. And so far all of our hand truck products that ship to the States were produced by Quingdao Taifa."

12

14. In December 2008, Customs followed up on a shipment of Valley Craft's aluminum hand trucks, imported from Plaintiff, requesting further information on the manufacturer.

15. Valley Craft contacted Plaintiff, through To, asking for confirmation of the identity and location of the hand truck manufacturer. To responded, admitting that the hand trucks in that shipment had been manufactured by Yangjiang Shunhe Industrial Co. Ltd, not Taifa.

**Contracts Between Valley Craft and Plaintiff**

16. Valley Craft initiated the purchase orders of aluminum hand trucks from Plaintiff by submitting a purchase order directly to Plaintiff. The purchase orders each contained "PURCHASE ORDER TERMS AND CONDITIONS," which provided that the order "shall become a binding contract upon the terms and conditions set forth herein upon acceptance by Seller either by signing and returning an acknowledgment or by prompt shipment of Articles ordered, whichever occurs first."

17. Pursuant to the purchase order terms and conditions, the Seller, in this case Plaintiff, agreed to warrant that the goods subject to the contract "have been produced in compliance with and shall be labeled and marked in accordance with, the applicable Federal, State and local laws, regulations, rules, guides, ordinances and standards in effect as of the date of shipment of such Articles, and that such Articles, or the sale thereof by Buyer, does not and will not violate any such laws."

18. Plaintiff also agreed, pursuant to the terms of the purchase order, that the goods subject to the contract "[a]re not misbranded or falsely or deceptively labeled, advertised, or invoiced."

19. Plaintiff further agreed that it would "defend, indemnify, and save Buyer harmless from any and all claims, suits, liabilities, damages, penalties, costs and expenses (including, but not limited to, reasonable attorney's fees) asserted against, incurred by, or imposed upon Buyer by reason or as a result of any actual or alleged violation or breach by Seller of any of the warranties or covenants set forth herein."

20. Each purchase order also contained an integration clause, which provided that "[t]his order constitutes the entire agreement and exclusive statement of the terms between the parties with respect to the purchase and sale of the Articles and service hereunder and supersedes all previous communications, representations or agreements between the parties with respect thereto. No alteration, modification or amendment of any of the provisions hereof shall be binding unless in writing and signed by Buyer's purchasing agent or other authorized procurement representative."

**Customs Investigation and Penalties**

21. In February 2009, LDI received a Notice of Action from Customs which advised that the company was under investigation for Valley Craft's importation of hand trucks that failed to have antidumping duties paid upon import. In September 2009, Customs informed LDI that it was still under investigation regarding the importation of hand trucks.

22.     In response to the Customs investigation, LDI initiated its own investigation into Valley Craft's hand truck imports. Through that investigation, LDI determined that the aluminum hand trucks imported from Plaintiff from 2004 to 2008 were not produced by the Taifa factory, as had been represented by Denson. The hand truck imports were, as a result, subject to the significantly higher antidumping rate. LDI reported its findings to Customs in October 2009.

23.     As a result of the inaccurate manufacturer information listed on Valley Craft's shipments of hand trucks from Plaintiff, Valley Craft paid to Customs an additional $709,360.21 in additional antidumping duties. LDI was also required to pay a penalty of $1,252,045, in addition to significant legal expenses resulting from the Customs investigation and resolution.

**Fraudulent Concealment and Tolling**

24.     From 2004 through at least early 2009, Plaintiff engaged in a course of conduct intended to conceal its fraudulent misrepresentations, omissions, and breaches of the parties' contracts by continually and repeatedly representing that the manufacturer of Valley Craft's aluminum hand trucks was Taifa.

25.     Plaintiff moreover affirmatively concealed the true identity of the hand truck manufacturer when Valley Craft specifically requested that information. For example, in July 2007, Valley Craft asked Plaintiff whether it was purchasing any hand trucks made at a factory named Qingdao Future Tool. Plaintiff responded that no Valley Craft products were made by Future Tool, and that "[a]ll of the hand truck products that

we have shipped to your company were produced by Quingdao Taifa Group Imp. & Exp. Co. with the Anti-dumping case number A570891-004."

26. Plaintiff made the above statements knowing that they were false, or at a minimum, with a reckless disregard for the truth.

27. As a result of Plaintiff's persistent false representations on the invoices provided to Valley Craft, as well as its affirmative concealment of the manufacturer's identity when directly asked by Valley Craft, Valley Craft was not able to discover, and did not discover, Plaintiff's misrepresentations, omissions, and breaches of the parties' purchase orders until Customs initiated an investigation into LDI. Customs' investigation prompted LDI's own internal investigation in February 2009, through which LDI uncovered Plaintiff's wrongdoing.

## COUNT I – FRAUDULENT MISREPRESENTATION

28. LDI incorporates herein by reference the paragraphs set forth above.

29. From 2004 to 2008, Plaintiff falsely represented on each commercial invoice for Valley Craft's importation of aluminum hand trucks that the manufacturer of those hand trucks was the Taifa factory.

30. Plaintiff also falsely represented in communications with Valley Craft that its aluminum hand truck manufacturer was Taifa.

31. Plaintiff was aware that its statements regarding the aluminum hand truck manufacturer were false.

16

32. Plaintiff made the false misrepresentations with the knowledge and intention that Valley Craft would rely on the representations when reporting and paying its antidumping duties on the hand truck imports to Customs.

33. LDI and Valley Craft acted in reliance on Plaintiff's representations when reporting and paying antidumping duties on the hand truck imports to Customs.

34. As a result of Plaintiff's persistent false misrepresentations regarding the manufacturer of aluminum hand trucks imported by Valley Craft, Customs initiated an investigation into LDI, and LDI was required to pay over $700,000 in additional antidumping duties, over $1.2 million in penalties, and considerable attorney's fees.

## COUNT II – FRAUDULENT OMISSION

35. LDI incorporates herein by reference the paragraphs set forth above.

36. Plaintiff, while acting as broker to Valley Craft with respect to the purchase and importation of aluminum hand trucks from China, had knowledge regarding what manufacturer was producing the hand trucks purchased and imported by Valley Craft. As a result, Plaintiff had a duty to disclose the identity of the factory manufacturing the hand trucks to Valley Craft.

37. Instead, Plaintiff intentionally withheld the true identity of the hand truck manufacturer and accurate antidumping rate from Valley Craft.

38. Plaintiff's intentional omissions of material facts regarding the identity of the constitute fraudulent omission.

39. As a result of Plaintiff's persistent fraudulent omissions regarding the manufacturer of aluminum hand trucks imported by Valley Craft, LDI was required to

17

pay over $700,000 in additional antidumping duties and over $1.2 million in penalties to Customs, as well as considerable attorney's fees.

### COUNT III – BREACH OF CONTRACT

40. LDI incorporates herein by reference the paragraphs set forth above.

41. Valley Craft issued a purchase order to Plaintiff with respect to each purchase of aluminum hand trucks from 2004 to early 2009. Each purchase order, by its express terms, became a binding contract upon Plaintiff's fulfillment of the order.

42. Valley Craft fulfilled its obligations under each purchase order by paying for the hand trucks that were the subject of each order.

43. Pursuant to each purchase order, Plaintiff agreed that the hand trucks "shall be labeled and marked in accordance with, the applicable Federal, State and local laws, regulations, rules, guides, ordinances and standards." Plaintiff breached this express term of the purchase orders by falsely reporting on each invoice that the hand trucks were manufactured by the Taifa factory and therefore subject to a significantly lower antidumping duty, a violation of Federal antidumping regulations.

44. Pursuant to each purchase order, Plaintiff agreed that the hand trucks that were the subject of the order were "not misbranded or falsely or deceptively labeled, advertised, or invoiced." Plaintiff breached this express term of the purchase orders by falsely invoicing each shipment of hand trucks as having been manufactured by the Taifa factory and subject to Taifa's antidumping rate.

45. As a result of Plaintiff's breach, LDI was required to pay over $700,000 in additional antidumping duties and over $1.2 million in penalties to Customs, as well as considerable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, LDI asks that the Court enter judgment in its favor and against Plaintiff as follows:

1. Dismissing Plaintiff's Complaint with prejudice and providing that Plaintiff will take nothing under its Complaint herein;

2. Awarding LDI damages in an amount to be proven at trial, estimated to be in excess of $75,000 plus interest;

3. Awarding LDI the costs of the suit, including reasonable attorneys' fees; and

4. Awarding LDI such other and further relief as this Court may deem just and proper.

Dated: January 29, 2013                        DORSEY & WHITNEY LLP

By  s/Erin A. Collins
    William R. Stoeri #0140880
    stoeri.bill@dorsey.com
    Erin A. Collins #0388967
    collins.erin@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

*Attorneys for Defendant Liberty Diversified International, Inc. d/b/a Safco Products Co.*