UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-3109(DSD/JSM)

Denson International Limited,

        Plaintiff,

v.                                              **ORDER**

Liberty Diversified International,
Inc., doing business as Safco
Products Company,

        Defendant.


    Tiffany A. Blofield, Esq. and Winthrop & Weinstine, PA,
    225 South Sixth Street, Suite 3500, Minneapolis, MN
    55402, counsel for plaintiff.

    Meghan E. Lind, Esq. and Dorsey & Whitney LLP, 50 South
    Sixth Street, Suite 1500, Minneapolis, MN 55402, counsel
    for defendant.


    This matter is before the court upon the motion for summary
judgment by counterclaim defendant Denson International Limited
(Denson).  Based on a review of the file, record and proceedings
herein, and for the following reasons, the court grants the motion
in part.


                            **BACKGROUND**

    This commercial dispute arises out of the business
relationship between Denson and counterclaim plaintiff Liberty
Diversified International, Inc., doing business as Safco Products
Company (LDI).  LDI owned Valley Craft, a metal fabrication
company, which designed and sold metal hand trucks.  Bayer Decl.

¶ 2.   Denson coordinated with several factories in China to manufacture and ship Valley Craft hand trucks.  Id. ¶ 3.

In December 2004, the United States Department of Commerce issued an antidumping duty order on "Hand Trucks and Certain Parts Thereof from the People's Republic of China."  Lind Decl. Ex. 1, ECF No. 64.  Thereafter, Denson employee Vincent To informed Valley Craft of the order, which assigned an antidumping duty rate of 383.6 percent on imports of hand trucks from China.  See Countercl. ¶ 3.  In response, Valley Craft contacted Denson to cancel its pending orders of hand trucks.  Blofield Decl. Ex. A, ECF No. 55.  Denson informed Valley Craft, however, that it had a different supplier, nonparty Qingdao Taifa Group Co. (Taifa), which was subject to an antidumping duty rate of only 26.49 percent.  Countercl. ¶¶ 4, 9.  Denson suggested that all hand truck production be moved to the Taifa factory.  Blofield Decl. Ex. G, ECF No. 55.  Valley Craft agreed, and Denson thereafter informed LDI that it had moved production to the Taifa facility.  Lind Decl. Ex. 2, ECF No. 64.

Denson continued to supply hand trucks to Valley Craft.  The invoices for such transactions stated that the hand trucks were "produced by Qingdao Taifa Group Imp[.] & Exp. Co., Ltd. with the Anti-Dumping Case Number A560891-004."  Wong Decl. Ex. 1, at DENSON000558.  Valley Craft paid the lower antidumping rate of 26.49 percent for such shipments.  Countercl. ¶ 12.  In July 2007,

after an inquiry from a Valley Craft employee, Denson confirmed that "[a]ll of the hand truck products that [Denson had] shipped to [Valley Craft] were produced by" Taifa.  Lind Decl. Ex. 5, ECF No. 64.

In February 2008, a shipment of hand trucks was rejected by the United States Customs and Border Protection (Customs) because the invoice did not note the existence of the lower antidumping duty.  See Blofield Decl. Ex. H, ECF No. 55.  Valley Craft contacted Denson, and Denson stated that it believed there was no need to include a statement identifying the manufacturer. Id.  On April 1, 2008, Denson informed Valley Craft that a sister company of Taifa was the actual manufacturer of the hand trucks.  Lind Decl. Ex. 6, ECF No. 64.  That same day, LDI requested that Denson include language on the invoices noting that such shipments were "exempt from the anti-dumping duty." Blofield Decl. Ex. M, ECF No. 66.

Thereafter, Customs rejected another shipment of hand trucks and asked Valley Craft to explain why the shipment was not subject to antidumping duties.  Blofield Decl. Ex. C, ECF No. 55, at LDI00000259.  Valley Craft again contacted Denson, and was informed that Yangjiang Shunhe Industrial Co. Ltd (Yangjiang) had produced the hand trucks.  Lind Decl. Ex. 7, ECF No. 64.  Yangjiang was not

exempt from the higher antidumping rate.  Id. Ex. 1, at 2.  Denson sent its last shipment of hand trucks to Valley Craft on October 14, 2008.  Wong Decl. Ex. 3, at DENSON007745.

In February 2009, Customs informed LDI that it was under investigation for failing to pay antidumping duties.  Lind Decl. Ex. 8, ECF No. 64, at LDI00000246.  LDI initiated an internal investigation.  Bayer Decl. ¶ 4.  As part of the investigation, LDI asked Denson for purchase orders or invoices from Taifa.  Denson informed LDI that it could not provide the orders or invoices.  See Lind Decl. Ex. 11, ECF No. 64.  Ultimately, LDI was unable to determine whether the hand trucks imported from Denson were produced by the Taifa factory.  Bayer Decl. ¶ 5.  LDI reported its findings to Customs in October 2009.  See Lind Decl. Ex. 8, ECF No. 64.  Thereafter, LDI[1] paid $709,360.21 in antidumping duties to Customs.  Id. Exs. 8, 12.  Customs also assessed LDI a penalty of $1,252,045 for its noncompliance.  Id. Ex. 13, at LDI00002919.

On December 13, 2012, Denson filed a complaint, alleging misappropriation of trade secrets.  On January 29, 2013, LDI filed a counterclaim, alleging fraudulent misrepresentation, fraudulent omission and breach of contract.  Denson moves for summary judgment on the counterclaim.

---

[1] LDI sold Valley Craft in 2012, but retained liability related to the Customs investigation.  Bayer Decl. ¶ 7.

4

## DISCUSSION

### I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.  Fraudulent Misrepresentation

LDI first alleges a claim for fraudulent misrepresentation. Specifically, LDI alleges that Denson misrepresented that Taifa was the manufacturer of the hand trucks.  Under Minnesota law, to establish fraudulent misrepresentation, a plaintiff must demonstrate that

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (alteration in original) (citation omitted).  Denson responds that (1) LDI has not pleaded its fraudulent misrepresentation claim with the requisite particularity and (2) because LDI was aware that the hand trucks were not produced by Taifa, it did not detrimentally rely on any contrary statements made by Denson.

### A.  Rule 9(b)

Denson first argues that summary judgment on the fraudulent misrepresentation claim is warranted because the claim was insufficiently pleaded.  A plaintiff must plead fraud with particularity.  See Fed. R. Civ. P. 9(b).  The court "may enter

6

summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b)."  Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995) (citation omitted).  To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, where, when, and how" of an alleged fraud.  United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted).  In other words, a plaintiff must plead "the time, place and contents" of the false representations, the identity of the individual who made the representations and what was obtained thereby.  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citations and internal quotation marks omitted).

Denson argues that LDI has not identified the allegedly-fraudulent statements at issue.  LDI, however, has adduced, among other documents, (1) an email from Denson employee Edward Kong stating that "[a]ll of the hand truck products that [Denson had] shipped to [LDI] were produced by [Taifa]," Lind Decl. Ex. 5, ECF No. 64, and (2) invoices from Denson stating that the hand trucks were produced by Taifa, Wong Decl. Ex. 1.  Thus, LDI has adequately identified the source, time and contents of the allegedly-fraudulent representations by Denson.  As a result, Denson's argument that summary judgment is warranted based on insufficient pleading is unavailing.

**B.    Detrimental Reliance**

Denson next argues that the claim for fraudulent misrepresentation fails because LDI could not have detrimentally relied on the statements at issue.  Specifically, Denson argues that LDI was aware, prior to the Customs investigation, that the hand trucks at issue were not manufactured by Taifa.  Indeed, Denson's employee, Vincent To, informed LDI on April 1, 2008, that the hand trucks were not produced by Taifa.  See Lind Decl. Ex. 6, ECF No. 64.  Thereafter, LDI requested that Denson ship the hand carts with an invoice including the statement "that the[] carts are exempt from the anti-dumping" duty.  Blofield Decl. Ex. M, ECF No. 66.  As a result, Denson argues that LDI was aware - prior to Customs initiating the investigation in February 2009 - that the hand trucks were not produced by Taifa.

Even if LDI was aware in April 2008 that the hand trucks were not produced by Taifa,[2] Denson's argument is unavailing.  The scope of the Customs investigation encompassed several shipments made prior to April 2008.  Indeed, in its internal investigation, LDI found antidumping duty discrepancies occurring between April 2005 and February 2008 and "broker clerical errors" occurring in July 2006.  Lind Decl. Ex. 8, ECF No. 64, at LDI00000280-82.  Further, Customs found, as part of its investigation that LDI failed to

_____

[2] LDI contests such an assertion, arguing that, as recently as 2010, Denson maintained that the hand trucks were produced by Taifa.  See Lind Decl. Ex. 10, ECF No. 64.

comply with the antidumping duty on ten occasions.  Id. Ex. 13, at LDI00002919.  Thus, any knowledge by LDI in April 2008 that the hand trucks were not produced by Taifa, while potentially relevant, does not bar the fraudulent misrepresentation claim because the allegations relate, in part, to shipments predating such knowledge. As a result, at this stage in the proceedings, summary judgment is not warranted on the claim for fraudulent misrepresentation.

## III. Fraudulent Omission

Denson next argues that summary judgment is warranted on the fraudulent omission claim.  Under Minnesota law, "[t]he general rule is that one party to a transaction has no duty to disclose material facts to the other."  L&H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989) (citation and internal quotation marks omitted).  In other words, "[n]ondisclosure does not constitute fraud absent a legal or equitable obligation to communicate facts to a particular person ... [who] is entitled to that information."  Id. (citation and internal quotation marks omitted).  A duty to disclose facts may exist, however, "when a confidential or fiduciary relationship exists; when disclosure is necessary to clarify misleading information already disclosed; or, when one party has special knowledge of material facts to which the other party does not have access."  Am. Computer Trust Leasing v. Boerboom Int'l, Inc., 967 F.2d 1208, 1212 (8th Cir. 1992) (citation and internal quotation marks omitted) (applying Minnesota law).

Here, Denson argues that it was not a fiduciary of LDI and had no obligation to communicate facts about the manufacturing location to LDI. The court need not reach such an argument. As already explained, LDI can potentially establish its fraudulent omission claim by (1) demonstrating that Denson failed to clarify previously-disclosed information or (2) demonstrating that Denson had special knowledge of material facts that LDI did not have. See id. Here, LDI argues that Denson failed to correct its previous assurances that the hand trucks were manufactured at Taifa, and that material information about the manufacturing location was exclusively within Denson's control. As a result, at this stage in the proceedings and without a fully-developed record, summary judgment is not warranted on the fraudulent omission claim.

**IV.  Breach of Contract**

Finally, Denson argues that the breach of contract claim is untimely. Specifically, Denson argues that the breach of contract claim is subject to the four-year statute of limitations for sales of goods, as set forth by Minnesota's Uniform Commercial Code (UCC). LDI responds that the contract at issue was a contract for services, not a contract for the sale of goods. The Minnesota UCC applies to all transactions in goods. See Minn. Stat. § 336.2-102. Under the UCC, "goods" are "all things ... which are movable at the time of identification to the contract for sale" Id. § 336.2-105(1). LDI argues that its contract with Denson was a contract

10

for services - that is, for serving as the liaison between LDI and the manufacturing facilities - rather than for the hand trucks themselves.  Such an argument is unavailing.

When a contract arguably covers both goods and services, "Minnesota courts use the predominant purpose test to determine whether [the UCC] applies to such a contract or transaction." AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998) (citation and internal quotation marks omitted).  "The test [for mixed contracts is] whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved ... or is a transaction of sale, with labor incidentally involved ...."  Id. (first alteration in original) (citation omitted).

Here, LDI itself characterized the transaction as a purchase of hand trucks from Denson.  See Countercl. ¶ 41.  Moreover, the purchase orders entered into by LDI and Denson focus on goods rather than services.  For example, the purchase order includes provisions regarding shipping, packaging, workmanship and type of material - concepts that would not apply to a contract for the provision of services.  See, e.g., Lind Decl. Ex. 16, ECF No. 64. Further, only the hand trucks - and no services - are listed on the invoices sent by Denson to LDI.  See, e.g., Wong Decl. Ex. 1.  As a result, the court finds that the predominant purpose of the contract was the sale of goods, and the Minnesota UCC - with its

four-year statute of limitations - applies to the contract at issue.

LDI next argues that, even if the four-year statute of limitations applies, its claim is still timely. A claim for breach of a sale of goods contract "must be commenced within four years after the cause of action has accrued." Minn. Stat. § 336.2-725(1). LDI argues that the cause of action accrued when it discovered in February 2009 that it may have violated the anti-dumping regulations. Minnesota's UCC explicitly provides, however, that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Id. § 336.2-725(2). As a result, the cause of action accrued on October 14, 2008 - the date of the last shipment of hand trucks - which was more than four years prior to the commencement of this action on January 29, 2013. Therefore, the breach of contract claim is untimely, and summary judgment is warranted as to that claim.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 49] is granted in part, consistent with this order.

Dated:  July 9, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court
